**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Patrick Brown, and Collin Vincent, | ) |
| Plaintiffs, | ) Case No. 1:25-cv-01220 |
| v. | ) |
| National Football League, Inc. and NFL Enterprises LLC, | ) |
| Defendants. | ) |

**COMPLAINT FOR INJUNCTIVE RELIEF**

**TABLE OF CONTENTS**

**Page(s)**

NATURE OF THE ACTION ................................................................................................... 1
JURISDICTION AND VENUE .............................................................................................. 2
PARTIES .................................................................................................................................. 3
AGENTS AND CO-CONSPIRATORS .................................................................................. 3
RELEVANT MARKET........................................................................................................... 4
SUBSTANTIVE ALLEGATIONS ......................................................................................... 5
    A.    The NFL Has a History Of Illegally Directing Concerted Action By The Teams, In The Business Rather Than The Sporting Operations Thereof............................ 5
    B.    The NFL Has a Business Agreement With X ........................................................... 6
    C.    Teams Want to Open BlueSky Accounts .................................................................. 6
    D.    The NFL Has Directed a Group Boycott of Bluesky ............................................... 7
    E.    Defendants' Exclusive Agreement Has No Pro-Competitive Justification ............ 8
FIRST CLAIM FOR RELIEF VIOLATION OF SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. § 1 ................................................................................................ 10
REQUEST FOR RELIEF ...................................................................................................... 11

Plaintiffs Patrick Brown and Collin Vincent ("Plaintiffs"), by and through their undersigned counsel, bring this action against Defendants National Football League, Inc. and NFL Enterprises LLC (collectively "the NFL"), and allege upon personal knowledge as to each of them and its or his own actions and upon information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through his attorneys, as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action as fans who follow NFL news on social media.

2. On Monday, February 3, 2025, the NFL announced that its member teams, each an independently owned and operated for-profit business, could not open official team accounts on the microblogging platform BlueSky.

3. BlueSky was launched by, among others, Twitter founder Jack Dorsey, with the goal of moving online discourse beyond the control of social media oligarchs, and has grown at a rapid pace as Twitter (now X) experienced rapid changes to rules and culture under the ownership of Elon Musk, the world's wealthiest person. Many of BlueSky's users are "Twitter refugees," those who once used Twitter to follow breaking news and connect with wider communities, but have left the site under Musk's controversial management.

4. Several NFL teams have expressed interest in connecting with their customers, that is, their fan communities, on BlueSky. However, the NFL has imposed a rule that prohibits them from doing so, arrogating to itself the authority to centralize the rights to NFL breaking news.

5. This is an unlawful group boycott and restraint of free speech and commerce. BlueSky is a business, and it is attempting to provide a communication platform for individual teams to use as an outlet for fan information and engagement. The NFL teams should be free to make those decisions on their own. However, the NFL has told teams that they all must, uniformly,

1

refuse to do business with BlueSky in the way that they each do business with X, BlueSky's direct competitor.

6. According to published reports, the NFL has imposed this decision on its member teams as a financial matter. However, the NFL has repeatedly been sued where it centralizes power that is not specific to the sport, but rather concerns the business relationships of each of the teams.

7. The NFL has no immunity from antitrust law. It may make rules to run the sport and ensure competition on the field; it may not thwart competition on the playing field of business by making exclusive deals for the teams.

8. Plaintiffs are fans. They do not want to have to follow their teams on Elon Musk's X platform. As consumers, they should be free to decide that they do not want to do business with a particular outlet or brand.

9. The NFL's arrogation to itself to declare which platforms the teams announce news on means that the Plaintiffs have to either be active on X, or miss announcements from the team and engagement with the community of fans that others enjoy.

10. Consequently, Plaintiffs seek to enjoin the NFL from barring teams from opening and using BlueSky accounts.

**JURISDICTION AND VENUE**

11. Plaintiffs bring this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1).

12. This Court has subject matter jurisdiction over this action under Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and 28 U.S.C. §§ 1331 and 1337.

13. This Court has personal jurisdiction over Defendants in the Southern District of New York, where the NFL is headquartered. Some of the actions giving rise to the complaint took place in this District.

14. Venue is proper in this District under 28 U.S.C. § 1391 because Defendants transact business within the District, and key events establishing the claims arose in this District.

## PARTIES

15. Plaintiff Patrick Brown is a natural person who resides within Will County, Illinois. Plaintiff Brown has a Bluesky account and would follow NFL teams, including but not limited to the Chicago Bears, if they were allowed to be on Bluesky.

16. Plaintiff Collin Vincent is a natural person who resides within San Diego County, California. Plaintiff Vincent has a Bluesky account and would follow NFL teams, including but not limited to the Seattle Seahawks, if they were allowed to be on Bluesky.

17. Defendant National Football League, Inc. (the "NFL") is a corporation headquartered at 345 Park Avenue, 7th Floor, New York, New York, in the Southern District of New York. The NFL is owned by the 32 member football teams throughout the United States. Each of these teams is separately owned and operated, each is headquartered in various cities across the United States, and each is organized under the laws of the various states.

18. Defendant NFL Enterprises LLC is a Delaware limited-liability company, which is headquartered at 345 Park Avenue, 7th Floor, New York, New York in the Southern District of New York. Upon information and belief, Defendant NFL Enterprises LLC was organized to hold the broadcast rights of the 32 NFL teams and to license those rights to various entities.

## AGENTS AND CO-CONSPIRATORS

19. Each Defendant acted as the principal of or agent for the other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

20.     Various persons, partnerships, sole proprietors, firms, corporations, and individuals not named as Defendants in this Complaint, as well as individuals, the identities of which are not known at this time, participated as co-conspirators with Defendants in the offenses alleged herein. These persons or entities have performed acts or made statements in the furtherance of the conspiracy or in furtherance of anticompetitive conduct.

21.     Wherever in this Complaint reference is made to any act, deed, or transaction of any corporation or limited-liability entity, the allegation means that the corporation or entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or entity's business or affairs.

## **RELEVANT MARKET**

22.     The relevant geographic market is the United States of America.

23.     The relevant product market is the market for NFL news. Each team makes announcements about injuries, trades, player and staff personnel decisions and similar news which engaged fans follow closely and discuss. This flow of information, which keeps the fanbase engaged, is part of each team's strategy to sell tickets, television rights, and merchandise, among other products, which are the wares through which each team as a for-profit business makes money. While fans do not pay money for their team's news, they pay in attention, which social media platforms in turn monetize by advertising and selling data.

## SUBSTANTIVE ALLEGATIONS

A. **The NFL Has a History Of Illegally Directing Concerted Action By The Teams, In The Business Rather Than The Sporting Operations Thereof**

24. The NFL has a long history of illegally directing concerted action by its member teams. Many of these actions occur in relation to the business of the member teams, rather than their actual sporting operations.

25. The NFL has tried to control the business of individual NFL teams by forcing concerted action of all NFL teams.

26. For example, starting in 1963, the NFL directed all NFL teams to give all merchandising and licensing rights to NFL Properties LLC ("NFLP"). The NFL is not considered a single entity for purposes of merchandising and licensing rights of the independently owned NFL teams; rather, the NFL directed concerted action of the NFL teams to give all merchandising and licensing rights to NFLP.

27. As the Supreme Court held in *American Needle v. National Football League*, 560 U.S. 183, 198 (2010), "Although NFL teams have common interests such as promoting the NFL brand, they are still separate, profit-maximizing entities, and their interests in licensing team trademarks are not necessarily aligned." Merchandising and licensing rights are connected to the business of the sport, and not the operation of the sport.

28. The NFL also has a history of forcing competing NFL teams to decide if another NFL team should be allowed to move cities. For example, in 1980 the Oakland Raiders wanted to move from Oakland to Los Angeles, but a three-fourths vote for approval of the move by NFL teams was required. The Oakland Raiders did not receive the necessary votes and sued for Sherman Act § 1 violations. The NFL presented a single entity defense that was rejected, and a jury found the concerted action by the NFL teams to disallow the Raiders' move was a violation of Sherman

Act § 1.

29. The NFL has also forced its member teams to allow the NFL to license all out-of-market games to streaming services on their behalf. NFL teams are not allowed to license their own games individually to different streaming services.

B. **The NFL Has a Business Agreement With X**

30. The NFL and X (formerly known as Twitter) have engaged in a content partnership since 2013.

31. This partnership allows X to provide in-progress game highlights, including all touchdowns, moments after they happen.

32. According to X Data reports "There were over 1 million posts about the NFL on X, with over 806 million impressions and 89 million video views[.]" That is only the NFL Draft. Free agency acquisitions, franchise tags and more dominate X discussions during the offseason, and training camp will be a place where fans can get up-to-date information from reporters on the ground for their favorite team's practices leading up to the 2024 season.

33. The NFL renewed its agreement with X quietly and without announcement. The NFL issued no statement and provided no quotes to commemorate the latest renewal of their deal, but X did make announcements.

C. **Teams Want to Open BlueSky Accounts**

34. Bluesky, a social media platform with over 28 million users, attracted NFL teams to create accounts to share news and alerts with their millions of fans across the country.

35. Prior to the NFL's demand for a group boycott, several NFL teams used Bluesky. They and others wish to use Bluesky in the future to communicate with their fans and would, but for the NFL's demand for a group boycott, would do so.

36. For example, the New England Patriots had a Bluesky account until the NFL

ordered them, and the rest of the NFL, to delete their account. Fred Kirsch, vice president of content of the New England Patriots, reported, "Whenever the league gives us the green light we'll get back on Bluesky."

37. Bluesky could create a significant news hub for the NFL, and that is why many NFL teams had expressed interest in making Bluesky accounts until the NFL's recent action of prohibiting NFL teams from maintaining and creating accounts on Bluesky.

**D.    The NFL Has Directed a Group Boycott of Bluesky**

38. An agreement among competitors not to do business with targeted individuals or businesses is an illegal boycott, especially if the group of competitors working together has market power.

39. Boycotts to prevent a firm from entering a market or to disadvantage an existing competitor are also illegal.

40. A restriction effecting a concerted refusal to deal is normally illegal *per se* and a group boycott is illegal *per se*. The *per se* illegality has been found at least where it involves a conspiracy by the participants, as is concerted action by businesspersons to deprive others of access to merchandise they wish to sell to the public, or the elimination by joint collaborative action of discounters from access to the market.

41. Defendants directed through internal rule-making that the league's separate competitor team businesses must refuse to deal with Bluesky, the plaintiff's preferred platform.

42. Prior to the NFL's demand for a group boycott, Defendants caused the league's 32 separate competitor team businesses to engage with a single, centrally selected social media partner, Bluesky's direct competitor X Corp.

7

43. The refusal to deal with Bluesky, which forced plaintiffs to either forgo their team's granular news updates or view such information only on X, was pursuant to an agreement between Defendants, the 32 competitor teams and X.

44. At least two of the parties to the agreement are direct competitors: every one of the NFL's 32 separate teams is a direct competitor with every other team. They each compete at the same level in the market with the other teams.

45. The refusal to deal with Bluesky, in favor of X, in concert with each other competitor team, disadvantaged Bluesky and the Plaintiff users by denying Plaintiffs access to a supply of immediate granular news and information about their teams through any platform other than X, these are discriminatory conditions and terms that did not allow Bluesky to effectively compete.

46. The refusal to deal with plaintiff occurred in or affected interstate commerce as these are national social-media platforms, with users and ad revenue streams derived from all over the country (and worldwide).

47. Plaintiffs have been and continue to be injured because of the refusal to deal; they as any NFL fan must sign up for X/Twitter because that is the hub for NFL content, alternatively the Plaintiffs are injured if they forgo their immediate team news because they do not wish to support or sign up for X.

**E.   Defendants' Exclusive Agreement Has No Pro-Competitive Justification**

48. At a high level, the task of antitrust enforcers is to sort anticompetitive unreasonable restraints from reasonable, procompetitive or neutral restraints. Only the former are to be condemned under the antitrust laws.

49. The NFL created by its deal with X Corp., an exclusive deal with a social media company for all 32 teams' social media output. Alternatively, they have signaled to the 32

competitor teams to refuse to deal with Bluesky and its users, in favor of X.

50. The NFL cannot offer such procompetitive or neutral justifications for its restraints:

- There is no risk that allowing 32 competitor teams to broadcast granular news updates on platforms of their choice, would produce outcomes that are less efficient than they might be.
- There is no method for a net efficiency produced by exclusivity to benefit consumers. As between social media platforms, fan attention is zero sum, so the aggregate output of X's exclusive deal does not produce any gain that exceeds what is taken from Bluesky and other platforms.
- Nor is this a situation where restraining the league's 32 competitor teams to exclusively deal with X Corp., improves the relevant market's performance in any other way.
- There is no risk of market failure here. The market for instant and direct news reporting from sources is well established and not at risk of failure without the NFL's agreement with X Corp.
- The competitive process is harmed by the agreement between the NFL and X Corp. The challenged restraint (that all teams deal with X Corp. as opposed to Bluesky is harmful to competition in the market as defined herein.
- The agreement which restricts NFL teams from maintaining Bluesky accounts, cannot be said to reduce cost, increase output or improve product quality, service, or innovation.

51. "[A]lthough NFL teams have common interests such as promoting the NFL brand, they are still separate, profit-maximizing entities and their interests in licensing team trademarks are not necessarily aligned." *American Needle,* 560 U.S. at 198. Even though inherently the NFL,

9

and all professional sports leagues, must cooperate to produce NFL games, section 1 still applies unless there is a "complete unity of economic interest." *Id.* at 196 (quotation omitted).

52. NFL cannot plausibly allege a "complete unity of economic interest" in controlling and limiting what social media sites each team uses.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. § 1**

53. Plaintiffs repeat and reassert each of the allegations contained in paragraphs 1 to 59 as if fully alleged herein.

54. At present, Defendants have imposed a rule on each team in the league that they decline to have a team account on BlueSky. The teams are each a separately owned and operated for-profit business. The NFL's rule against BlueSky accounts is a restraint on horizontal competition barring each team from doing business with a specific firm. It is a group boycott, which is per se unlawful under Section 1 of the Sherman Act (15 U.S.C. § 1).

55. This group boycott imposes antitrust injury on Plaintiffs, and other fans, which will be irreparable if not enjoined. The NFL's rule complained of herein forces Plaintiffs and other fans to either forgo an immediate outlet for news about their teams, or to use the X microblogging platform, which many Plaintiffs and many other fans either prefer not to do, or refuse to do. The NFL's group boycott restricts output, and restricts consumer choice, with no output-expanding benefit.

56. As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiffs have been injured in that their must either forgo a thing of value, or pay with their attention through an outlet that they prefer not to trade with, or refuse to trade with. No remedy available at law can ameliorate this harm. Money damages will not fix the effect that the NFL's rule compels Plaintiffs to do business with X or forgo breaking team news. Only an injunction will remedy this harm.

Accordingly, Plaintiff seek injunctive and equitable relief, as well as costs and fees as permitted by law.

57. The injunction sought is warranted as the balance of harms strongly favors it. Defendants have no legitimate interest in restricting the output of NFL breaking news to any particular social media platform, and allowing teams to each elect their own forum or fora to communicate with their fans is output-increasing. The costs of opening and managing a new account fall entirely on each team, which can choose to, or choose not to, make a Bluesky account as a matter of its business relationship with its own fans. The injunction would deprive the NFL of nothing, except the centralized power that it has unlawfully claimed and has no right to.

58. Plaintiffs, on the other hand, are harmed by the loss of consumer choice. The NFL's unlawful restriction harms them, season after season, until they are relieved of its anticompetitive strictures.

59. Because the NFL's anticompetitive rule affects much of the NFL fan base, the public interest favors the permanent injunction sought herein. Plaintiffs are just to fans, like so many others, who wish to connect with their teams and communities on social media. The injunction sought would allow each team and its fan base to engage on the social media that makes the most sense for them in the free market. The NFL does not create any positive good for the wider fan base of the teams or the sport by interfering as it now does.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

1. Enjoining Defendants from continuing the anticompetitive practices alleged in this Complaint;

2. Finding Defendants jointly and severally liable for the conduct alleged in this Complaint;

3. Ordering Defendants to pay attorney fees and costs of suit; and

4. Ordering such other and further relief as may be just and proper.

Dated: February 11, 2025

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: */s/ Thomas H. Burt*
Thomas H. Burt
Lillian Grinnell
270 Madison Avenue
New York, New York 10016
Telephone: 212/545-4600
Facsimile: 212/686-0114
burt@whafh.com
grinnell@whafh.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Betsy C. Manifold
Alex J. Tramontano
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599
manifold@whafh.com
tramontano@whafh.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
Carl Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Telephone: 312/984-0000
Facsimile: 312/212-4401
malmstrom@whafh.com

*Attorneys for Plaintiffs*
*pro hac vice forthcoming*

NFLBSKY:4935-3150-8508